THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* GAUTIER, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Ponce in a prosecution for the sale of adulterated milk.

No. 658.—Decided April 24, 1914.

ADULTERATED MILK—INTENTION.—In accordance with section 1 of Act No. 59 of 1910, the mere act of adulterating or diluting milk is not punishable unless it is done with the intention of offering the same for sale; therefore, when a person is accused of having committed that act it must be proved that he did so with the intention of offering the same for sale.

ID.—SALE OF ADULTERATED MILK—INTENTION.—Section 1 of Act No. 59 of 1910 also punishes the mere act of keeping or offering adulterated or diluted milk for sale and in this case it is not necessary to prove that the milk was adulterated or diluted with the intention of offering it for sale or that the accused was the one who adulterated it or that he knew that it was adulterated.

ID.—SALE OF ADULTERATED MILK—LIABILITY OF OWNER.—In accordance with section 1 of Act No. 59 of 1910, the owner of a milk stall where adulterated or diluted milk is sold, is criminally liable for the said offense, and it is immaterial whether the sale was made by him or by his employe.

The facts are stated in the opinion.
*Mr. Charles E. Foote, fiscal,* for The People.
*Mr. R. Martínez Nadal* for the appellant.

MR. JUSTICE ALDREY delivered the opinion of the court.

Manuel S. Gautier took this appeal from a judgment of the District Court of Ponce under which he was sentenced to one day's imprisonment for an offense against the public health in keeping and offering for sale adulterated milk as pure milk.

It is admitted by the appellant, and he also admitted it

in the lower court, that the milk seized in one of his milk stalls was adulterated by the addition of water and that he is one of the members of the firm which owns the stall where the milk was found. It appears that the said firm has several stalls dedicated to the sale of milk and that an employee of the firm is in charge of each.

In view of the foregoing the appellant contends that the lower court erred in dismissing a motion to quash the information made by him on the ground that it had not been proved that he had adulterated the milk "with the intention of selling or offering the same for sale, or that he caused or permitted the same to be sold or offered for sale, or that he kept or offered the same for sale or sold it knowing that it was adulterated, or that he had ordered or consented that his employee should offer for sale or sell the adulterated milk, or that the accused even knew that his employee had adulterated the milk or offered it for sale."

Section 1 of Act No. 59 of March 10, 1910, which governs the case, reads as follows:

"Section 1.—Every person who adulterates or dilutes milk with the intent to offer the same for sale, or cause or permit it to be offered for sale, and every person who sells, offers or keeps the same for sale, is guilty of a misdemeanor and shall be punished by imprisonment in jail not exceeding one month, and in addition to such punishment the adulterated milk shall be confiscated; *Provided,* etc."

According to that provision, a person who adulterates or dilutes milk with the intention of offering the same for sale may be punished. In other words, the mere act of adulterating or diluting milk is not punishable unless it is done with the intention of offering the same for sale; therefore, when a person is accused of having committed that act it must be proved that he did so with the intention of offering the same for sale; but when he sells, offers, or keeps the adulterated

or diluted milk for sale, it is not necessary to prove that he adulterated or diluted it with the intention of offering the same for sale, because the fact of his selling, offering, or keeping it for sale shows that the adulteration was made with that object in view.

The law punishes the mere act of keeping or offering adulterated or diluted milk for sale, therefore it is not necessary to prove that the person accused was the one who adulterated it or that he knew that it was adulterated. Hence it is the duty of every person engaged in the business of selling milk to assure himself that it is not adulterated unless he wishes to suffer the consequences of his neglect, for the law does not take into account whether he was the person who adulterated it, but only whether he is selling or offering the adulterated or diluted milk for sale.

This question was fully considered by this court in the case of *The People* v. *Ferrarias,* 15 P. R. R., 793, in which case the conclusion was reached that when by virtue of a provision of law the fraudulent intention is an essential element of the crime of keeping or offering adulterated or diluted milk for sale, such fraudulent intent must be proved, but that it is not necessary to prove the same when the mere act of selling or keeping adulterated milk for sale is a punishable offense. Probably the decision in the above case, inasmuch as it held also that the law then in force required that such sale should be fraudulent, was the reason why the act was amended a few months later by the Act of 1910 which eliminated the fraudulent intent as an element of the offense of selling, keeping, or offering adulterated milk for sale. The foregoing doctrine was affirmed by this court after the present act went into effect, in the case of *The People* v. *Calderón,* 17 P. R. R., 459, in which we said:

"Appellant insists that he did not adulterate the milk, and there was no proof of his intervention; but the selling of adulterated milk is the statutory crime prohibited and proved."

The courts of the United States also have discussed the same question in various decisions, from which we will quote only the following:

"This indictment is upon *St.* 1864, c. 122, page 4, which provides, among other things, that 'whoever sells or keeps or offers for sale adulterated milk, or milk to which water or any foreign substance has been added,' shall be punished by a fine as therein specified. The defendant contends that the Commonwealth should have been held to prove on the trial that he committed the offense knowing the milk to be adulterated. But the language of the statute does not require such proof; and it is evident that the legislature did not intend that it should do so. The *St.* of 1863, c. 140, required such proof, and one of the reasons which induced the legislature to repeal it and substitute the existing statute for it undoubtedly was that they regarded it as impracticable in most cases to prove the knowledge, and that they also regarded it as reasonable under all the circumstances that the seller of milk take upon himself the risk of knowing that the article he offers for sale is not adulterated. It is of the greatest importance that the community shall be protected against the frauds now practiced so extensively and skilfully in the adulteration of articles of diet by those who deal in them, and if the legislature deem it important that those who sell them shall be held absolutely liable, notwithstanding their ignorance of the adulteration, we can see nothing unreasonable in throwing this risk upon them." *Commonwealth* v. *Farren*, 91 Mass., 489, 490.

"The offense aimed at by the statutes under consideration is the sale of adulterated milk. The offense is established by proof of a sale of milk, which is shown to be adulterated when tested by the standard set up by the act. That the seller had knowledge of the adulteration need not be shown." *The People* v. *Schaeffer*, 41 Hun, 23, 25.

The other question raised by the appellant is that he cannot be held criminally responsible for acts which his employee may have committed. However, we have held the contrary in the case of *The People* v. *Barquet*, 19 P. R. R., 753, in which we said:

"In regard to the insufficiency of the evidence to support the judgment against Juan and Narciso Barquet, we think that it shows

sufficiently that the offense was committed in the mercantile establishment of Barquet Hermanos by one of its clerks while in the discharge of his duties, and shows further that the accused are members of the said firm and have direct participation in its management, which firm is not a corporation but a partnership. This being the case, it is very plain that said accused persons may be prosecuted and punished individually for a violation of the internal-revenue law committed by an employee acting for and on behalf of the partnership.''

Although it is a general rule that a person should not be held responsible for the acts of another on account of the mere relationship of principal and agent, nevertheless there are exceptions to that rule. In consideration of the public welfare many statutes impose penalties without regard to the intention of violating them, to the end that, having greater care in complying with them, the public health may be preserved, while if the intent were an element it would be impossible to prove an infraction of the law. Our statute requires a seller of milk to sell pure milk and noncompliance with the same is punishable as a crime. The appellant is engaged in the business of selling milk and therefore it is immaterial whether he sold it personally or through an employee. Selling adulterated or diluted milk increases the profits and therefore he must suffer the consequences. In the case of *The People* v. *Roby,* 18 N. W., 362; 52 Mich., 577; 50 Am. Rep., 270, it was held:

''*    *    * a saloon-keeper was properly convicted whose clerk, without his knowledge or consent, but while he was on the premises, had opened the saloon on Sunday morning to have it cleaned out and had meanwhile sold a drink to a casual customer who insisted on having it.''

A similar principle is upheld in the cases of *Lehman* v. *District of Columbia,* 19 App. D. C., 217, and *State* v. *Burchinal,* 2 Har., 528.

We see no ground for the reversal of the judgment appealed from and it should be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf and del Toro concurred.